DAVID STEVENSON BREWING CO. v. MALKMUS.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

NOTES—LIABILITY OF MAKER—AGENCY.

Defendant, a solicitor of trade for plaintiffs, who were brewers, got W. as a customer; but, owing to W.'s indebtedness to other brewers, plaintiffs could not receive him as a customer, but told defendant that if the business could be done in his name, and he would take the lease, and give a mortgage and note to them for money to buy the saloon, they would deliver goods to W. *Held*, that defendant was personally liable on the note so given; the only assurance given him that he would not be being the statement of the clerk of plaintiffs' attorney on taking acknowledgment to the mortgage, and he not being shown to have any authority therefor.

Appeal from trial term, New York county.

Action by the David Stevenson Brewing Company against Ernst Malkmus. From a judgment on a verdict for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

H. M. Dater, for appellant.

L. J. Somerville, for respondents.

VAN BRUNT, P. J. This action was brought to recover the amount of a deficiency arising under the foreclosure of a certain chattel mortgage made by the defendant to the plaintiffs on certain chattels in a liquor store. It appeared that on the 10th of December, 1895, the defendant executed to the plaintiffs a note for the sum of $1,100, due on demand, and at the same time executed a chattel mortgage under seal, as collateral security therefor, on the fixtures in the above-described place. This mortgage was foreclosed, and there was a deficiency upon the sale of the chattels described in the mortgage; and this action, as already stated, was brought to recover such deficiency. The defendant claimed that it was understood between himself and the plaintiffs that he was not to be personally liable upon the note and mortgage in question, but that the real party who was to answer to the plaintiffs was one Henry Widder. It appeared upon the trial that the defendant had been employed by the plaintiffs to collect for them and to bring in new trade. Prior to December 10, 1895, the defendant brought to the plaintiffs as a customer the said Widder; but the plaintiffs stated that they could not deal with him, because he was indebted to other breweries, and it was against the rules of the Brewers' Board of Trade to take a customer who was indebted to other companies belonging to the board; that the only way in which they could take Widder as a customer would be by paying his debts to the other brewing companies. The superintendent of the plaintiffs stated to the defendant that the plaintiffs were unwilling to pay Widder's deficiency. Some conversation being had between the plaintiffs' superintendent, the defendant, and Widder, the superintendent asked Widder if he would have any objection to giving the defendant a bill of sale of the business, and putting

the licenses in defendant's name, so that he (Widder) could do business under the defendant's name. The superintendent explained to Widder that, if the other breweries were to find out that the plaintiffs were doing business with Widder under his own name, they could prevent their so doing, and compel the plaintiffs to pay the amount which Widder owed to them. Widder agreed to do as requested, and thereupon the papers were prepared, a license was taken out in the defendant's name, and a check was drawn to and delivered to the defendant for $1,100 to buy the saloon. This check was paid over to the then owner of the saloon, from whom Widder had agreed to purchase the business. The note above mentioned was executed by the defendant. He also executed a chattel mortgage, which he says was executed in the presence of Mr. Sullivan, a clerk of the plaintiffs' attorney, and that Mr. Sullivan told Mr. Widder at the time that it was only a matter of form; that he was the man who was to keep the place.

It is claimed that under these circumstances Widder is the real debtor, and that it was the understanding between the parties that the defendant should not be responsible upon the note and chattel mortgage which he gave to secure the $1,100; endeavoring to bring himself within the cases of Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32; Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 864; and other cases of similar import. Upon an examination of the evidence in this case, it will be seen that there was no promise or statement made to the defendant by the plaintiffs or their superintendent in reference to his responsibility under this arrangement. The only statement that was made in that regard was that alleged to have been made by Sullivan, the attorney's clerk, to Widder. It is perfectly clear that even if the representation to Widder would inure to the defendant's benefit, which is extremely doubtful, there is no evidence whatever that Sullivan had any right to barter away the claims of the plaintiffs. Indeed, it is clear that he had not. He was merely a clerk to take the acknowledgment upon the execution of the chattel mortgage, and when that was done his function was ended, as far as this defendant was concerned. Whatever the relations between Widder and the defendant may have been, there is certainly nothing in this record to release the defendant from the obligation which he entered into. In order that a party may be relieved from his express contract to pay money which he has received, the evidence should be positive and direct. The defendant was anxious to make his commission upon the transaction. The plaintiffs could not receive Widder as a customer, and the defendant was informed by them that if the business could be done in his name, and he take the lease and give the mortgage and sign the note, they would deliver goods to Widder. To this proposition the defendant assented, and there was nothing whatever in the negotiations between these parties which in any way limited the liability which such a transaction naturally entailed.

It seems to us, therefore, that the judgment and order appealed from should be affirmed, with costs. All concur.